210 So.2d 4 (1968)
STATE of Florida, Petitioner,
v.
Edward Arthur WADSWORTH, Respondent.
No. 36663.
Supreme Court of Florida.
May 1, 1968.
*5 Earl Faircloth, Atty. Gen., and Fred T. Gallagher, Asst. Atty. Gen., for petitioner.
Sholts & Adams, West Palm Beach, for respondent.
ROBERTS, Justice.
This cause is before the court for review, on direct conflict grounds, of a decision of the District Court of Appeal, Fourth District, in Wadsworth v. State, Fla.App. 1967, 201 So.2d 836.
The respondent-defendant was convicted by a jury and adjudged guilty of the offense of manslaughter by an intoxicated motorist as denounced by Section 860.01, Fla. Stat., F.S.A. several witnesses  police officers and others  testified that the defendant was intoxicated at the time of the accident. It was also shown that a miniature vodka bottle was found in defendant's car following the collision. The defendant entered a plea of not guilty to the charge. His attorney cross-examined the State's witnesses; however, the defendant did not take the stand in his own defense nor offer any evidence whatever to rebut the charge against him.
On appeal, a majority of the appellate court were of the opinion that the judgment of conviction should be reversed because of harmful error in admitting into evidence the testimony of one Laken. This testimony is summarized as follows in the majority opinion:
"Louis Laken testified that he was a sales clerk in a retail liquor store. He stated that Wadsworth came in the liquor store two or three times a week for a period of over two years prior to the fatal collision and purchased miniature bottles of vodka. Laken further testified that Wadsworth, while making these purchases, stated that he (Wadsworth) `had a problem.' Defendant's counsel made timely and appropriate objection and also moved for a mistrial but to no avail.
"The unmistakable meaning and inference to be gained from Laken's testimony was that Wadsworth was a habitual and long time user of alcoholic beverages  that Wadsworth was an alcoholic  a drunkard. In sum, whatever else this might have been, it constituted a highly prejudicial assault upon the defendant's character."
Before proceeding to a discussion of the point of law involved, it should be noted that we are not as sanguine as was the appellate court that defendant's "problem" was alcoholism. The purchase of a miniature *6 bottle (one and six-tenth ounces) of vodka two or three times a week seems to us to be more consistent with the necessity of concealing his purchases from a disapproving (or, perhaps, an alcoholic) wife than with the necessity of purchasing a sufficient quantity of liquor to satisfy the inordinate thirst of an alcoholic. For the purpose of this review, however, we assume, as we must, that the jury had the right to infer from Laken's testimony that defendant was an alcoholic.
The point of law with which we are here concerned arises from the appellate court's findings that the evidence that defendant was an alcoholic was not relevant to any issues before the court, and that its "sole thrust" was at the character and propensity of the defendant. It was held that, in these circumstances, the Laken testimony was inadmissible under the rule of Williams v. State, Fla. 1959, 110 So.2d 654. In Williams, this court re-stated the rule respecting the admissibility of evidence in terms of relevancy: Evidence which is relevant to any material issue is admissible unless the sole relevancy is to the character of the accused or his propensity toward crime. If these findings of a majority of the appellate court were correct, it is clear that, under the rule of the Williams case, the Laken testimony was properly held to be inadmissible.
It is contended here on behalf of the State, however, that the appellate court's findings  both as to relevancy and as to the nature of the testimony as an assault on the character of the defendant  are in direct conflict with the decision of the District Court of Appeal, Second District, in Locke v. Brown, Fla.App. 1967, 194 So.2d 45. In the Locke case  a civil suit for damages arising out of an automobile accident  the intoxication of the plaintiff was a material issue, and the trial judge admitted evidence that plaintiff was hospitalized for alcoholism on several occasions before and after the accident. On appeal, this ruling was affirmed, the court holding, in effect, that where a factual issue is raised as to the condition of sobriety or insobriety of one of the parties at the time of the accident, evidence that such party was habitually intoxicated or a drunkard is admissible. The court did, however, limit the application of the rule as follows: 
"This evidence of prior intemperate habits is not direct evidence on the issue of whether the plaintiff was intoxicated at the time of the accident, but is evidence tending to substantiate, by way of corroboration, defendant's other proof bearing upon plaintiff's intoxication. McCarty v. Gappelberg, 273 S.W.2d 943 (Tex.Civ. App. 1954). See also Hardeman v. Georgia Power Co., 42 Ga. App. 435, 156 S.E. 642 (1931)." 194 So.2d at page 47.
We agree with the Second District Court of Appeal  and with the well considered dissenting opinion in the case sub judice  that evidence of alcoholism relates to the "prior intemperate habits" of a person rather than to the character of such person, as held by a majority of the Fourth District Court of Appeal in the decision here reviewed. Certainly, in ordinary common parlance, alcoholism is not said to be or thought of as a trait of character. The Legislature of this State apparently considers it a matter of habit. See § 562.50, Fla. Stat., F.S.A. prohibiting the supplying of alcoholic beverages to a person "habitually addicted" to the use of alcoholic beverages; Sec. 440.02(19), Fla. Stat., F.S.A. excluding from workmen's compensation coverage a disability resulting from "a disease due to the habitual use of alcohol"; and § 65.04, Fla. Stat., F.S.A. specifying as one of the grounds for a divorce in this State "habitual intemperance." (Emphasis added.) The habit may become so fixed as to constitute a disease. See New York Life Ins. Co. v. Hoffman, 1940, 238 Ala. 648, 193 So. 104.
We also agree that evidence of the prior intemperate habits of a person is relevant to, and may be given as corroborating evidence on, the question of whether such *7 person was intoxicated at any given time and place, when intoxication at such time and place is a material issue in the cause. The reasons for this rule are well stated in Locke v. Brown, supra, and in the dissenting opinion in the case sub judice and need not be here repeated.
In the Locke case, an issue was formed by the pleadings as to the plaintiff's intoxication at the time of the accident, and evidence was adduced by the parties, pro and con, in support of their respective contentions. In the instant case, the defendant pleaded "not guilty" to the crime charged against him  manslaughter by an intoxicated motorist  thus joining issue on and holding the State to strict proof of each and every essential element of such crime. One of such essential elements, and a material factual issue in the case, was the intoxication vel non of the defendant at the time of the accident which caused the death of the decedent. From the defendant's behavior at the time of the accident, as shown by the State's witnesses, the jury had the right to find that defendant was so intoxicated. (We note, parenthetically, that in cases such as that sub judice there will always necessarily be evidence indicating that the accused was intoxicated at the time of the accident; otherwise, there would be no basis for charging him with a crime in which intoxication is an essential element.) The evidence that defendant was an alcoholic merely supplemented and strengthened the evidence already adduced by the State to show that he was intoxicated at the time of the accident. And we think, as did the appellate court in Locke v. Brown, supra, 194 So.2d 45, and as did Associate Judge Willson, dissenting in the case sub judice, and for the reasons well stated in those opinions, that it was admissible for such purpose  that is, as corroborating but not as direct evidence of defendant's intoxication at the time of the accident.
The State also raises another "direct conflict" point of law in support of its contention that the decision of the majority in the case sub judice should be quashed. This has to do with the finding that the admission of the Laken testimony was not harmless error. The majority opinion stated that
"Even if this evidence be considered to have some slight relevancy, its receipt was so highly prejudicial to the accused, when weighed against the circumstance that such evidence was merely cumulative with only the remotest evidentiary value, that we say that the evidence should have been excluded and that its inclusion was harmful error."
In support of its ruling in this respect there was quoted at length excerpts from the opinion of this court in Seaboard Air Line Railroad Company v. Ford, Fla. 1956, 92 So.2d 160, 166. The Seaboard case does stand for the proposition that the trial judge should exercise his discretion in favor of excluding evidence which is merely cumulative, only remotely relevant, and which has a tendency to prejudice the jury against the defendant far in excess of any remote evidentiary value; but it does not stand for the proposition that his failure to do so is, in every case, harmful error, requiring a reversal. It was stated early in the opinion that "each of the alleged errors, standing alone, could be considered harmless", 92 So.2d at page 165; and at the end of the excerpt quoted in the majority opinion (but omitted therefrom) this court held that "The error was not harmless, when considered in connection with the other errors referred to herein." 92 So.2d at page 167. (Emphasis added.)
In the instant case, apparently the only error relied upon by the defendant as a basis for the reversal of his conviction was the admission of the Laken testimony. It has long been settled law in this State, by statute and judicial decision, that in order to be a ground for reversal an error in the rejection or admission of testimony must be shown to have been prejudicial to the defendant. As early as 1911 we had a "harmless error" statute. Section 54.23, Fla. Stat. The 1939 Criminal Code, in *8 § 924.33, Fla. Stat., F.S.A., included another "harmless error" provision. These statutes and the decisions of this court construing them are discussed in detail in the dissenting opinion of Associate Judge Willson in the case sub judice. His conclusion respecting the facts and the law applicable thereto cannot be improved upon, and we adopt it as our own: 
"An examination of the record establishes that the evidence of defendant's guilt was clear, convincing, and uncontradicted, and leaves no reasonable doubt as to his guilt. The jury could have reached no other conclusion without violating their oath. The same result would have been reached without the questioned evidence, and its admission did not reach the legality of the trial. The appellant has not demonstrated that the admission of the evidence, if error, was harmful in any manner, and the judgment of the lower court should be affirmed, in keeping with the requirements of F.S.A. § 54.23 and § 924.33, and the decisions in Kelly v. State, supra [145 Fla. 491, 199 So. 764]; Roberts v. State, 1944, 154 Fla. 36, 16 So.2d 435; Fletcher v. State, Fla. 1953, 65 So.2d 845; Mankowski v. State, supra [Fla. 1955, 83 So.2d 597]; Albano v. State, Fla. 1956, 89 So.2d 342; Conner v. State, Fla. 1958, 106 So.2d 416; Urga v. State, Fla.App. 1963, 155 So.2d 719. To do otherwise disregards the plain mandate of the Harmless Error Statutes, and conflicts with the decision of [this court]." 201 So.2d at pp. 843-844.
Accordingly, the decision here reviewed should be and it is hereby quashed.
It is so ordered.
CALDWELL, C.J., ADAMS, J., SPECTOR, District Court Judge, and WILLIS, Circuit Judge, concur.
THORNAL, J., dissents.
ERVIN, J., dissents with Opinion.
ERVIN, Justice (dissenting).
I doubt the testimony of the weekly purchases of vodka by the defendant and his statement to the seller thereof that "he had a problem" was relevant to a determination of whether he was guilty of the charge of manslaughter. According to most authorities, evidence of the general habits of a person is not admissible for the purpose of showing his conduct upon a specific occasion. 29 Am.Jur.2d, page 349. Admission of said testimony may have been harmfully prejudicial to the defendant.