359 So.2d 460 (1978)
HO YIN WONG, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-112.
District Court of Appeal of Florida, Third District.
February 28, 1978.
As Corrected On Rehearing May 8, 1978.
*461 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen. and Joel Rosenblatt, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., and HENDRY and NATHAN, JJ.
PER CURIAM.
Appellant, defendant below, appeals from a judgment of conviction entered pursuant to a jury verdict of guilty on charges of possession and importation of cannabis. Appellant's sole defense at trial was that he was unaware that a straw bag he brought into this country after a foreign vacation contained cannabis. The three issues on appeal all center around the testimony of a single witness, an airport police officer, whose testimony was crucial to the establishment of appellant's guilty knowledge of this fact.
Appellant first contends that the trial court erred in restricting defense counsel's attempts to impeach the credibility of the witness. It is well settled that control of the scope of cross examination lies with the trial judge and is not subject to review except for a clear abuse of discretion. See Baisden v. State, 203 So.2d 194 (Fla. 4th DCA 1967) and cases cited therein. The record reveals that a wide range of cross examination was permitted, and that considerable impeachment material was adduced. Therefore, we find no such abuse of discretion as would warrant a finding of reversible error.
Appellant next asserts there was error in the trial court's allowing the prosecution to bolster the credibility of its key witness by the use of a prior consistent statement. While it is true that the general rule is that prior consistent statements are inadmissible to rebut impeachment based on prior inconsistent statements, this general rule is not applicable in a situation, such as that herein at issue, in which there is controversy over whether the witness did, in fact, utter a self-contradiction. See Kellam v. Thomas, 287 So.2d 733 (Fla. 4th DCA 1974).
Finally, appellant contends that the trial court erred in refusing to order the state to correct "false" testimony which it elicited on redirect from this key witness. The nature of this allegedly false testimony is crucial, for if the record supported the allegation that the state refused to correct false testimony which bore upon the officer's credibility, this would constitute reversible error. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *462 Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). But the testimony at issue did not sink to the level of deliberate falsehood, nor can we conclude that the prosecution knowingly pried untruths from the witness. In fact, the record reveals that defense counsel vigorously exploited the differences between the officer's testimony on deposition and his testimony at trial, and by defense counsel's considered omission from evidence of the deposition itself, contributed to any defect now asserted.
Specifically, appellant contends that at trial, the officer testified that appellant had confessed while he and the officer were alone, whereas on deposition, the same witness testified that appellant had made incriminating statements in the presence of others. Appellant argues that the prosecutor elicited a declaration from the officer that his deposition had also contained testimony which showed that he had interrogated appellant when alone with him, when the prosecutor knew his deposition contained no such testimony.[1]
Review of the record reveals considerable confusion regarding the points in time at which the incriminating statements were alleged to have been made by appellant. It is important to note that more than one statement was being discussed at trial. The statements at issue when the officer was deposed were among these. The officer's deposition did not show that appellant made incriminating statements while alone with the officer, for no questions were asked which would have elicited such testimony. It did indicate that the officer had transported appellant from the customs office where the first incriminating statements were made.
Counsel for the defense exerted prodigious efforts to use the discrepancy between the officer's testimony at deposition and his testimony at trial to impeach his credibility. During the course of these impeachment efforts the prosecution objected to a question asked by defense counsel and asked that the defense "move in the entirety of the deposition." Such request is patently inconsistent with any refusal to correct false testimony deliberately elicited.
More importantly, the trial judge inquired of defense counsel regarding the relevancy of his repeated attempts on re-cross to have the witness show where in his deposition any statement existed showing that he had interrogated appellant privately. Defense counsel responded that the reason he wanted the witness to specify such statement in the deposition was "because the prosecutor was allowed to state, ask him, over objection, if it was in there." Whereupon the court asked if defense counsel sought to introduce the deposition into evidence. The response was negative. "At this time, no, I am not seeking to introduce the document." Nor was the deposition ever introduced, although the court marked it as an exhibit of the court "for purposes of whatever you wish... ."[2]
It is true that questioning by the prosecution elicited a response which was false. It is equally true that no deliberate attempt to insert false evidence appears, for the prosecution was more than willing, it was eager, to have the entire deposition introduced into evidence. The defense chose to extract as much impeachment value from the discrepancy between the witness' deposition and his in-court testimony as it could, and deliberately chose not to introduce the document into evidence though given every opportunity to do so.
The law does not demand that every defendant have a perfect trial. It does demand a fair trial. We conclude that this standard was met in this case. If any material fact was left undisclosed, it was because the defense chose to have it so. Having *463 declined to present the disputed document at trial, appellant will not be allowed to complain on appeal of the result of his own tactics. We find no error below.
Affirmed.
It is so ordered.
NOTES
[1] The precise question asked was: "At the deposition, did you tell him that you then took him back to the police station, where you routinely take people and questioned him further, and he told you the things there?"

The witness responded: "Yes, sir, I did."
[2] The court later clarified the fact that the deposition was made a court exhibit, not for the jury, but for the purpose of any record.